In the Matter of the Estate of ROBERT J. HORNER, Deceased.

Surrogate's Court, New York County, March, 1923.

**Wills — construction — trusts — suspension of power of alienation — when trust severable and valid — gift of income — vested and contingent interests.**

The will of a testator who left him surviving his widow, a son who had four infant children, and a daughter who was and is the mother of one child, directed his residuary estate to be divided into four equal parts, one of which was given

outright to his daughter and the remaining parts were constituted as separate trusts. The *first* trust, which was for the benefit of the four infant children of testator's son, directed the trustees to pay out of the income accruing upon said trust such sums as they should deem advisable for the maintenance and education of said children with a further direction that upon any of them reaching the age of twenty-one years, to pay to said child his or her interest in the trust fund, as shall be determined by the number of said children then surviving and after all of them had reached the age of twenty-one years and the payments provided for should have been made, the trust should thereupon terminate, and while it was provided that the surviving issue of any of said children dying before reaching the age of twenty-one years should receive the portion of the trust fund his or her parent would have received if living, no provision was made for the contingency of all of said children dying without issue before reaching the age of twenty-one years. The *second* trust, which was for the benefit of testator's son, directed the payment to him of the sum of thirty dollars a week during his life with discretion in the trustees to increase the payment to fifty dollars a week. The surplus income was to be paid into the trust fund for the four children of the testator's son upon whose death the principal was to be paid into the said trust, if existing or if it had terminated, to be equally divided between the children of testator's son. The *third* trust, which was for the benefit of children of testator's daughter, directed payment of the income thereof for their " maintenance and education " until each became of age, and the conditions for payment over at majority or in case of death before that time were similar to those of the first trust. A *fourth* trust fund in the sum of fifty thousand dollars was created for the benefit of testator's widow for her life with direction that upon her death one-half of tho principal was to be paid into the first trust fund and the remaining half into the third trust fund. *Held*, that as to declare the first trust invalid on the ground that it unlawfully suspends the power of alienation and prevents vesting within the statutory period of two lives in being (Pers. Prop. Law, § 11) with resulting intestacy, would nullify the plain intention of the testator, the primary trust for each of the children of testator's son will be held to be severable and valid for the minority of each of said grandchildren of the testator and the income therefrom together with the surplus income under the second trust should be paid to them during the minority of each.

The gift of income under the third trust is valid for the minority of the child of testator's daughter and the gift of income for testator's widow under the fourth trust is also valid.

Whether the interest of each of testator's grandchildren under the first trust was vested or contingent or whether the ulterior limitations are valid or invalid, not determined, upon the principle that a conclusion which sustains the will and carries out the intention of the testator will be preferred to a conclusion which deprives the grandchildren of any benefits, and enables their parents to obtain the same by intestacy.

The purpose of the court in its decision herein is not to go beyond the actual necessities of the present situation but to reserve the interpretation of the provision as to subsequent estates, the gift over and the remainder under the will, until the actual events have occurred.

PROCEEDING to construe a will.

*Paul N. Turner*, for executors and trustees.

*Milton Dammann* (*Maurice R. Roche*, of counsel), for Lillian Horner.

Surrogate's Court, New York County, March, 1923.       [Vol. 120

*Paul Gross*, for Grace B. Simms.

*Abraham Benedict*, special guardian for children of Robert J. Horner, Jr.

*Emanuel Van Dernoot*, special guardian for Gladys Simms.

*James I. Cuff*, for Anna B. Horner.

Foley, S.  This proceeding is brought for the construction of the will of decedent.  He died February 26, 1922, leaving his widow, Lillian Horner; his son, Robert J. Horner, Jr., and his daughter, Grace B. Simms.  The son, Robert J. Horner, Jr., at that time was the father of four infants, Elsie, Muriel, Constance and Robert J., 3d.  The daughter, Grace B. Simms, at that time was and is the mother of one child, Gladys Simms.  The validity of four trusts created by the will is challenged.  The residuary estate was divided into four equal parts.  One part was given outright to his daughter, Grace.  The remaining three parts were constituted as separate trusts.  The first was entitled " A trust for the benefit of the children of Robert J. Horner, Jr."  Its terms were fixed by the 10th paragraph of the will as follows:  " *Tenth.* I direct my Trustees to pay out of the interest accruing upon the trust created for the benefit of children of Robert J. Horner, Jr., such sums as they shall deem advisable for the maintenance and education of Elsie Horner, Muriel Horner, Robert J. Horner, Jr., and Constance Horner.  Upon any of said children reaching the age of twenty-one (21) years, I direct my Trustees to pay to said child his or her interest in said trust fund as shall be determined by the number of the said children then surviving and after all of the said children herein mentioned have reached the age of twenty-one (21) years and the payments herein provided have been made, the trust created for their benefit shall thereupon terminate.  Should any of said children die before reaching the age of twenty-one years, leaving issue him or her surviving, the said issue shall receive the portion of said fund the parent would have received, if living."  No provision was made for the contingency of all of the children dying without issue before reaching twenty-one.  For convenience in reference I have designated this trust as trust A.

The second trust is entitled " A trust for the benefit of Robert J. Horner, Jr."  I shall hereafter refer to this trust as trust B.  Its terms require the trustees to pay to him the sum of thirty dollars a week during his life, with discretion in the trustees to increase the payment to fifty dollars a week.  The surplus income is to be paid to the trust fund for the benefit of the *children* of Robert J. Horner, Jr., which has been designated by me as trust A.  Upon the

death of the son the principal is to be paid over to trust A, if existing, or if that trust has terminated, to be divided equally between the children of Robert J. Horner, Jr.

The third trust carved out of the residue is entitled " A trust for the benefit of children of Grace B. Simms." The income was directed to be paid for their " maintenance and education " until each arrives at the age of twenty-one years. The conditions for payment over at majority or in case of death before twenty-one leaving issue, are similar to those of the trust for the benefit of the children of Robert J. Horner, Jr., set forth above. This trust I shall refer to as trust C.

The fourth trust was created by paragraph 5 in the sum of $50,000 and was for the benefit of the widow for life. Upon her death the principal is to be divided into two parts. One-half is to be paid to the trust for the benefit of the children of Robert J. Horner, Jr. (trust A), and the remaining half is to be paid to the trust for the benefit of the children of Mrs. Simms (trust C). This trust I have designated as trust D.

So numerous are the questions raised as to the validity of these trusts and the contingencies unforeseen by the testator or by the draftsman of the will, that a comprehensive construction of the will this early in the administration of the estate would be futile. Experience has shown that actualities and not hypothetical situations are the best subjects of interpretation. *Matter of Mount*, 185 N. Y. 162, 170. As stated in *Matter of Franklin Trust Co.*, 190 App. Div. 575, 577: " Attempts to settle points that may arise under a will creating estates in expectancy are often futile. Such an effort, noticeably painstaking, in *Manice* v. *Manice* (43 N. Y. 303), did not prevent another litigation upon the same will which reached the Court of Appeals thirty-five years later (*Matter of Mount*, 185 N. Y. 162, 170. See *Beers* v. *Grant*, 110 App. Div. 152; affd., 185 N. Y. 533)." It is my purpose in this proceeding, therefore, not to go beyond the actual necessities of the present situation, but to reserve the interpretation of the provisions as to the subsequent estates, the gifts over and remainders under the will until the actual events have occurred.

Salvage of the lawful provisions of the will has been a fixed judicial policy. " The principle is now well settled that the courts lean in favor of the preservation of such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator." *Matter of Hitchcock*, 222 N. Y. 57, 73. So here it is unnecessary to declare the entire will void or to decree intestacy.

The validity of the trust for the benefit of the children of

Surrogate's Court, New York County, March, 1923.     [Vol. 120

Robert J. Horner, Jr., is attacked on the ground that it unlawfully suspends the power of alienation and prevents vesting within the statutory period of two lives in being. Pers. Prop. Law, § 11. The rule as to suspension is that a minority is to be considered as a " life." · It is claimed by the testator's widow that the language of the will makes possible the continuation of this trust for the lives of at least three of the grandchildren, and that this trust is void. This contention assumes that at least two of the four grandchildren will die without issue before arriving at the age of twenty-one, and that a primary share will pass through a third life and be suspended until a third child reaches majority. At the outset of the examination the general intent of the testator must be emphasized. He created this trust for the benefit of his four grandchildren for their maintenance and education, a purpose favored by the courts. The testator's lack of confidence in the father of the children is indicated by the creation of trust A for his grandchildren and the limitation of income to be paid to him to thirty dollars a week under trust B. This reduction of the gift to his son is explained by him as follows: " The reason I have made no other provisions for my son, Robert J. Horner, Jr., excepting that contained in this paragraph, is because of cash advances made to him during my lifetime." It is significant, too, that the surplus income of this trust B was given to the grandchildren, under trust A. To declare this entire trust invalid with resulting intestacy, would nullify the plain intention of the testator. I am of the opinion, therefore, that the primary trust for each child is severable and is valid for the minority of each of these children. *Matter of Colegrove,* 221 N. Y. 455; *Schermerhorn* v. *Cotting,* 131 id. 48; *Steinway* v. *Steinway,* 163 id. 183; *Carrier* v. *Carrier,* 226 id. 114; *Leach* v. *Godwin,* 198 id. 35. There are other supporting reasons for a determination of the validity of this trust, *first,* the trust is for specificially named beneficiaries; *second,* as to any child dying with issue before twenty-one, the gift over of the share to issue is clearly valid; *third,* the trust is likewise valid as to income and principal of the primary quarter share in case of the survival of each one of the children to his or her majority; *fourth,* the will authorizes the trustees in their discretion, in paragraph 13, to advance out of the principal of the trust fund to any one or more of these children a sum not exceeding $500 in any year for their support and education, to be charged " as an advancement." Under this language the fund for each grandchild, amounting to about $10,000, may be practically exhausted before it reaches twenty-one. The language used in the will indicates that the testator intended to create a vested interest for each grandchild

in one-fourth of this fund, and the validity of the gifts appears to be sustained by *Vanderpoel* v. *Loew*, 112 N. Y. 167, and *Orr* v. *Orr*, 147 App. Div. 753; affd., 212 N. Y. 615. No determination, however, is made by me at this time as to whether the interest of each child is vested or contingent, or whether the ulterior limitations are valid or invalid. A conclusion which sustains the will and carries out the intention of the testator will be preferred to a conclusion which deprives the grandchildren of any benefits, and enables their parents to obtain their shares by intestacy. The validity of the first life estate was upheld in *Matter of Wilcox*, 194 N. Y. 288, although the subsequent estates for minorities were held invalid and illegal. It will be noted in that case that the final construction holding certain portions of the will invalid was made after the first life tenant had died. *Whitefield* v. *Crissman*, 123 App. Div. 233, relied upon by the parties who claim the trusts are invalid, is distinguishable from the present will, because there the trust was not divisible and the terms of the will required the maintenance of the trust *in solido* until all the four beneficiaries attained their majority.

To carry out the general intent of the testator and for the same reasons as sustained the validity of the life interests in trusts A and B, I hold that a valid life estate was created in trust C for the benefit of the granddaughter, Gladys Simms. The situation here is almost similar to that in *Matter of Mount, supra*. It was held there that the invalidity of a testamentary disposition in favor of afterborn children did not affect the legality of the trust in favor of the existing children (p. 170). While the trust would be invalid as to any children born to Mrs. Simms after the death of the testator, it must be held to create a valid estate for the minority of the only child living at the testator's death. In connection with this trust I have disregarded the evidence offered on behalf of Mrs. Simms, that it is impossible for her to have further issue. An interesting discussion of the question will be found in an article entitled " The Presumption of the Possibility of Issue in Women," Columbia Law Review, Jan. 1923. My determination of the question makes unnecessary the further discussion of this issue, but I am of the opinion that, under the circumstances here, the evidence cannot be considered. In this trust, also, the trustees are authorized to make advancements similar to the provisions for the children of Robert, Jr. The determination as to the validity of the life estates in trust A, and the reasons given by me, justify a similar holding with regard to the surplus income of trust B, which is directed to be paid to the children of Robert J. Horner, Jr. No attack has been made upon the validity of the life estate of the

widow in trust D. Any determination as to the validity of the subsequent life estates under that trust for the lives of the grandchildren may await the termination of the widow's life estate.

It is clear that the testator made a clerical error in paragraph 6, in referring to "paragraph 6." He intended thereby to refer to paragraph 5.

The foregoing construction carries out the intention of the testator so far as it is possible to ascertain it and to give it effect.

Submit decree construing will accordingly and holding, (1) the trust in paragraph 10 for the children for Robert J. Horner, Jr., is severable, and that the income therefrom, together with surplus income under paragraph 11, should be paid to Elsie, Muriel, Constance and Robert, 3d, for the minority of each; (2) the gift of the income under paragraph 9 is valid for the minority of Gladys Simms; (3) the gift of the income for the widow is valid under paragraph 5.

Decreed accordingly.